UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YASMEEN TAYLOR,

                 Petitioner,                             Case No.  20-cv-13359

                                                         Honorable Mark A. Goldsmith

v.

JEREMY HOWARD,

                 Respondent.

_____/

## OPINION AND ORDER
## (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; (2) DENYING CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Yasmeen Taylor filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges her convictions for second-degree murder, assault with intent to murder, and possession of a firearm during the commission of a felony. The petition raises two claims for relief. For the reasons explained below, the Court denies the petition. The Court denies a certificate of appealability and grants Petitioner leave to proceed on appeal in forma pauperis.

## I.  BACKGROUND

The charges against Petitioner arose from a shooting in Detroit on February 13, 2015. The Michigan Court of Appeals summarized the testimony leading to Petitioner's convictions as follows:

> This case arises from the death of Marquez Douglas (Douglas), and the assault of Latoya Johnson. Defendant, who testified at trial, offered a defense of alibi and denied being present at the crime scene or in the state on the day of the offense. In contrast, the prosecution presented the testimony of Johnson. Johnson testified that on February 13, 2015, she, her children, brother Milton, and the decedent lived at

the house of Alicia Johnson, her mother, located at Teppert street, in Detroit. She testified that Douglas returned home around 5:50 a.m. accompanied by defendant whom she had seen previously. Johnson overheard conversational exchanges between defendant and Douglas both of whom were in Douglas's bedroom. At some point, the conversation and laughter were replaced by about 15 minutes of silence that ended with a single gunshot. As she was seeking cover, Johnson heard approximately five more gunshots. Minutes later, defendant entered the room where Johnson was hiding, and despite her pleading shot her. Johnson called 911, and she then went to the living room. She saw Douglas on the floor of the living room. Douglas had a pulse, but he was not responsive. She testified that Douglas "was shot above the chest on his left side and on his stomach on his left side." When the police arrived, Johnson gave them a statement. Eventually, defendant was apprehended in Huntington, West Virginia.

***

The jury ultimately found defendant guilty of second-degree murder, assault with intent to commit murder, and felony-firearm. Defendant's sentencing information report (SIR) recommended a sentencing guidelines minimum range of 225 to 375 months' imprisonment or life. During sentencing, the trial court stated, "[t]his was a cold blooded killing. So I don't believe that the guideline minimum range fully reflects the brutality and heartlessness of [defendant's] attack on Mr. Douglas and Ms. Johnson." The trial court noted that defendant shot Douglas multiple times, and that after Johnson pleaded for her life defendant shot at her. The trial court also noted the "excessively violent nature of [defendant's] fatal assault on Mr. Douglas and her cold-blooded firing of a gun at Ms. Johnson's head, as well as the evidence presented at trial, which clearly established her guilt[.]"

People v. Taylor, No. 329849, 2017 WL 908301, at *1–*2 (Mich. Ct. App. Mar. 7, 2017), rev'd in part, appeal denied in part, 902 N.W.2d 881 (Mich. 2017).

Following a jury trial, Petitioner was convicted of second-degree murder, Mich. Comp. L. § 750.317; assault with intent to murder (AWIM), Mich. Comp. L. § 750.83; and possession of a firearm during the commission of a felony (felony-firearm) Mich. Comp. L. § 750.227b. She was sentenced to 39 to 55 years for second-degree murder, 20 to 30 years for AWIM, and two years for felony-firearm.

Petitioner filed an appeal of right in the Michigan Court of Appeals. She claimed: (i) the trial court violated her due process rights by denying a challenge for cause of a juror who had just

2

started a new job and would be unable to devote her full attention to the case; and (ii) resentencing is required where the trial court departed above the sentencing guidelines range and the reason given did not support the departure.  The Michigan Court of Appeals affirmed Petitioner's convictions but remanded for consideration of whether her second-degree murder sentence satisfied the principle of proportionality and for a hearing pursuant to <u>People v. Lockridge</u>, 870 N.W.2d 502 (Mich. 2015), and <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005).  <u>Id.</u> at *4– *5.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same claims raised in the Michigan Court of Appeals.  The State filed a cross-appeal.  In lieu of granting leave to appeal, the Michigan Supreme Court reversed that part of the court of appeals' opinion remanding the case to the trial court and, instead, remanded the case to the court of appeals "for plenary review of the defendant's claim that her sentence for second-degree murder was disproportionate under the standard set forth in <u>People v. Milbourn</u>, 461 N.W.2d 1 (1990)." <u>People v. Taylor</u>, 902 N.W.2d 881, 881 (Mich. 2017).  In all other respects, the Michigan Supreme Court denied leave to appeal.  <u>Id.</u>

On remand from the Michigan Supreme Court, the Michigan Court of Appeals remanded to the trial court for resentencing.  <u>People v. Taylor</u>, No. 329849, 2018 WL 1936176, at *1 (Mich. Ct. App. Apr. 24, 2018).  The State filed an application for leave to appeal in the Michigan Supreme Court which was denied because the court was "not persuaded that the question presented should be reviewed by [the] Court."  <u>People v. Taylor</u>, 935 N.W.2d 321, 322 (Mich. 2019).

On remand, the trial court reduced Petitioner's minimum sentence for second-degree murder from 39 to 33 years; the maximum sentence of 55 years remained unchanged.  The trial

3

court reaffirmed the sentences of 20 to 30 years for AWIM and two years for felony-firearm.  See 9/30/2020 Resentencing Hr'g Tr., 27–29 (Dkt. 13-14).  Petitioner appealed as of right, arguing that the sentence imposed for second-degree murder was disproportionate.  The Michigan Court of Appeals affirmed her sentence.  People v. Taylor, No. 355360, 2021 WL 5498675, at *4 (Mich. Ct. App. Nov. 23, 2021).  Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which the court denied.  People v. Taylor, 973 N.W.2d 152 (Mich. 2022).

Petitioner now seeks habeas relief on these grounds:

I. The trial court violated Petitioner's due process rights by denying a challenge for cause of a juror who had just started a new job, and when asked if she would be totally focused on the trial, responded "Honestly, I'm thinking about my new job" and that she would "not really" be able to devote her full attention.

II. The trial court violated Petitioner's Fifth and Sixth Amendment constitutional rights by sentencing her outside the legally state prescribed floor.

(See Dkts. 3, 8.)

Respondent filed an answer to the petition (Dkt. 12) maintaining that part of Petitioner's first claim and her entire second claim are unexhausted, and that both claims are meritless.  The Court opts to address the merits of Taylor's claims because the Court may decide an unexhausted claim where the unexhausted claim is plainly meritless. Granberry v. Greer, 481 U.S. 129, 131 (1987).

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  Shoop v. Hill, 139 S. Ct 504, 506 (2019).  A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision

4

that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication.  28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405–406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011)

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.  For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## II.  ANALYSIS

### A.  Jury-Related Claim

Petitioner argues that her right to due process was violated when the trial judge denied the defense's challenge for cause of juror "H".  Juror H indicated that she was scheduled to start a new job that day and, as a result, would "not really" be able to devote her full attention to the trial.  (Dkt. 13-10, PageID.576.)  She also stated that she could keep an open mind, could assess the

5

credibility of a police officer in the same way she would any other witness, did not have any religious convictions that would be problematic in deliberations, and could set aside feelings of sympathy.  (Id. at PageID.575–577.)

After citing applicable standards, the Michigan Court of Appeals found no error in the trial court's denial of Petitioner's challenge for cause:

> The trial court did not abuse its discretion when it denied defense counsel's challenge for cause against juror H. During voir dire, juror H indicated that she was scheduled to begin a new job on that day, that she would be thinking about her new job, and that she would "[n]ot really" be able to devote her full attention to the trial. However, juror H did not demonstrate any bias or an inability to impartially weigh testimony. When juror H was questioned by the trial court, she said that she would give a police officer's testimony that same weight as any other witness, despite the fact that her uncle worked for a "gang squad." Juror H also stated that she would be able to put aside any feelings of sympathy, and that she would be able to keep an open mind.
>
> The trial court was in the best position to assess whether juror H would be impartial. Thus, considering juror H's equivocal statements about her ability to focus on the trial, as well as her clear statements that indicated she would be an unbiased and impartial juror, the trial court's denial of defense counsel's challenge for cause was not outside the range of principled outcomes. Juror H's stated lack of focus, and her seeming desire to not serve on the jury, was not a ground for her dismissal for cause.
>
> On appeal, defendant contends that juror H's state of mind prevented her from rendering a just verdict. In support of her contention, defendant relies on People v. DeFreitas, 116 A.D.3d 1078, 1080; 984 N.Y.S.2d 423 (2014), a nonbinding extra-jurisdictional authority. In DeFreitas, the Appellate Division of the New York Supreme Court noted that, in the context of a challenge for cause, dismissal of a juror who expressed concerns about her employment responsibilities would only be warranted if "the juror indicates that he or she would be distracted or preoccupied to the extent that it would preclude him or her from deliberating in a fair and impartial manner." Id. (citations omitted). Ultimately, the Appellate Division held that the trial court did not abuse its discretion when it failed to discharge that juror because that juror's responses did not "in any way intimat[e] that she would be incapable of rendering an impartial verdict." Id. at 1080–1081 (citations omitted).

> Disregarding the nonbinding nature of defendant's supporting authority, defendant's contention is without merit. The extra-jurisdictional authority relied on by defendant wholly comports with <u>Williams</u>, 241 Mich. App. at 519, as the key inquiry is whether the juror is capable of rendering an impartial verdict. Further, defendant concludes without explication that juror H's state of mind prevented her from rendering a just verdict, and that there was a real likelihood that her distraction affected her vote. Therefore, defendant has failed to carry her burden to demonstrate that juror H was either biased or incompetent.

<u>Taylor</u>, 2017 WL 908301, at *3.

Criminal defendants have a federal constitutional right to a fair and impartial jury. <u>Duncan v. Louisiana</u>, 391 U.S. 145, 149 (1968). A defendant's Sixth Amendment right to a fair trial is violated when the "essential feature" of the jury is not preserved. <u>Williams v. Florida</u>, 399 U.S. 78, 100 (1970). A trial court's determination of a juror's competency to serve is entitled to a presumption of correctness. <u>Patton v. Yount</u>, 467 U.S. 1025, 1038–1039 (1984). The determination whether a juror is impartial has been recognized as essentially a determination of credibility and, "therefore largely one of demeanor." <u>Id.</u> at 1038. The trial court's determination of such questions is entitled to "special deference." <u>Id.</u>

Here, the trial court clearly judged juror H competent to fulfill her duty as a juror. At no point did juror H indicate an inability to be fair and impartial. The Michigan Court of Appeals applied the correct standard of review and Petitioner has not rebutted the presumption of correctness afforded the state court's finding that the juror was competent to serve. Therefore, Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

Petitioner also maintains that, during the trial, she observed that juror H "closed her eyes frequently and stared off into space." (Dkt. 3, PageID.11.) There is no indication in the record that defense counsel, the prosecutor, or the court expressed concern about any juror's attentiveness.

7

Indeed, one could conclude that if juror H closed her eyes it was because she was listening intently—many people close their eyes when focusing on what they are hearing.  Thus, Petitioner's unsupported allegation falls far short of establishing that juror H was inattentive during the trial.

Finally, to the extent that Petitioner argues that her right to due process was violated because no post-verdict interview of juror H was conducted, her claim is meritless.  The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences.  Remmer v. United States, 347 U.S. 227, 229–230 (1954).  But internal influences may not be used to impeach a verdict.  Tanner v. United States, 483 U.S. 107, 117–118 (1987).

An extraneous influence on a juror is "'one derived from specific knowledge about or a relationship with either the parties or their witnesses.'"  Garcia v. Andrews, 488 F.3d 370, 376 (6th Cir. 2007) (quoting United States v. Herndon, 156 F.3d 629, 635 (6th Cir. 1998)).  Examples of "internal" influences include "the behavior of jurors during deliberations, the jurors' ability to hear and comprehend trial testimony, and the physical and mental incompetence of a juror."  Williams v. Bagley, 380 F.3d 932, 945 n.7 (6th Cir. 2004).  Here, juror H's concern about her new job and whether it influenced her verdict in this case is an internal influence which may not impeach the verdict.  As such, this claim is denied.

**B. Sentencing Claim**

Petitioner challenges her 33-to-55-year sentence for second-degree murder, which exceeded the minimum sentencing guidelines range by 21 months. She maintains that her sentence: (1) was based on impermissible judicial fact-finding, (2) violates her rights under the Fifth Amendment, (3) violates the principle of proportionality, and (4) was based on factors already accounted for in the sentencing guidelines.

First, Petitioner argues that she was sentenced based on impermissible judicial fact-finding. Under the Sixth Amendment, any fact that increases the maximum penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The same requirement applies to any fact that increases a mandatory minimum. Alleyne v. United States, 570 U.S. 99, 111–112 (2013). In Lockridge, the Michigan Supreme Court held that, under Alleyne, the mandatory application of Michigan's sentencing guidelines was unconstitutional. 870 N.W.2d at 519 (Mich. 2015). To remedy this violation, the Michigan Supreme Court made the sentencing guidelines advisory. Id. at 521–521.

Petitioner was sentenced after Lockridge was decided and the state sentencing guidelines were made advisory. Purely advisory applications of the sentencing guidelines do not violate the Sixth Amendment. United States v. Booker, 543 U.S. 220, 222 (2005). Moreover, here, the state trial court departed upwards from the sentencing guidelines. Consequently, the guidelines range is immaterial because the Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of sentencing discretion, as happened here, violates the Sixth Amendment. See id. at 233 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to

differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); see also Reign v. Gidley, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."). Petitioner's claim is meritless.

Second, Petitioner argues that the trial court violated her Fifth Amendment right not to incriminate herself by considering her silence and lack of remorse in deciding her sentence. The Fifth Amendment right to remain silent "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless [s]he chooses to speak in the unfettered exercise of h[er] own will, and to suffer no penalty . . . for such silence.'" Estelle v. Smith, 451 U.S. 454, 468 (1981) (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)). This privilege extends to the sentencing phase of a criminal case. See Mitchell v. United States, 526 U.S. 314, 328–329 (1999). A sentencing court may not make adverse inferences from a defendant's silence as to the facts of the offense. Id. at 330. But, in Mitchell, the Supreme Court specifically declined to decide "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of [a] downward adjustment" because that question was not before the Court. Id.

Petitioner did not exercise her right to remain silent at her resentencing. Instead, she briefly addressed the court, stated that she empathized with the family and prayed "for guidance and healing for everyone involved." (Dkt. 13-14, PageID.966.) The trial court discussed the basis for its sentence at length, including Petitioner's "preternatural ability to lie," and the court's observation that Petitioner rolled her eyes during victim LaToya Johnson's testimony. (Id. at PageID.970.) The trial court also noted multiple significant discrepancies between Petitioner's

10

trial testimony and what she told a mitigation expert.  (Id. at PageID.970–975.)  The trial court did

not believe the defense's argument at resentencing that Petitioner was rehabilitated and found her

to lack remorse.  In addition, the trial judge considered the brutality of the attack and concluded

that Petitioner does not belong in society.

The Michigan Court of Appeals held that the trial court properly considered Petitioner's

lack of remorse, among many other factors, in fashioning her sentence.  Taylor, 2021 WL 5498675,

at *3.  The court of appeals noted that the trial court considered the question of remorse in the

context of Petitioner's potential for rehabilitation.  Id.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  "[T]he Supreme Court has never held that a

court may not consider a defendant's lack of remorse in fashioning a sentence."  Trotter v.

Berghuis, No. 17-2530, 2018 WL 11447868, at *5 (6th Cir. Nov. 20, 2018) (citing White v.

Woodall, 572 U.S. 415, 423–424 (2014)).  Therefore, consideration of a defendant's remorse is

not contrary to or an unreasonable application of clearly established federal law.

Third, Petitioner argues that her sentence was disproportionate and unreasonable.  The

Supreme Court has held that "[t]he Eighth Amendment does not require strict proportionality

between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly

disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

concurring in part and concurring in the judgment) (quoting Solem v. Helm, 463 U.S. 277, 288

(1983)).  Courts reviewing Eighth Amendment proportionality must remain highly deferential to

the legislatures in determining the appropriate punishments for crimes.  United States v. Layne,

324 F.3d 464, 473–474 (6th Cir. 2003) (citing Harmelin, 501 U.S. at 999).  "In implementing this

11

'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" Cowherd v. Million, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting United States v. Marks, 209 F.3d 577, 583 (6th Cir. 2000)).  If the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." Williams v. New York, 337 U.S. 241, 244–245 (1949).

Petitioner's sentence was not grossly disproportionate or excessive.  The statutory maximum for second-degree murder is fifteen years.  Mich. Comp. L. § 750.317.  Her sentence did not exceed the statutory maximum.  As such, it was not unreasonable.

Finally, Petitioner argues that her sentence was unreasonable because the court considered facts already accounted for in the sentencing guidelines.  A state court's interpretation and application of sentencing guidelines present only issues of state law that are not cognizable on habeas review.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).  Petitioner points to no clearly established Federal law limiting a trial court's discretion to rely on factors already accounted for in the guidelines scoring to justify an upward departure.  Cf. United States v. Tristan-Madrigal, 601 F.3d 629, 636 n.1. (6th Cir. 2010) (in the context of the Federal Sentencing Guidelines, declining to adopt a bright-line rule which would render a sentence unreasonable whenever a court considers conduct in imposing a variance that was already used to calculate the guidelines range).

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.  Therefore, the Court denies a certificate of appealability.

## V.  LEAVE TO PROCEED IN FORMA PAUPERIS

The standard for granting an application for leave to proceed in forma pauperis  is a lower standard than the standard for certificates of appealability.  Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)).  While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith.  Id. at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  The Court finds that an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal.  Id.

13

## VI.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

SO ORDERED.

Dated:  February 29, 2024                     s/Mark A. Goldsmith
       Detroit, Michigan                     MARK A. GOLDSMITH
                                       United States District Judge